IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, GENERAL COMMITTEE OF ADJUSTMENT, CENTRAL REGION, *et al.*,<br>Plaintiffs,<br>v.<br>UNION PACIFIC RAILROAD COMPANY,<br>Defendant. | Case No. 07 C 160<br>Hon. George W. Lindberg |

MEMORANDUM OPINION AND ORDER

Before the court are the parties' cross-motions for partial summary judgment as to the non-stayed claims in this case. Plaintiffs are five individual locomotive engineers A.K. Schad, Dustin Etherton, Mark Alexander, Paul Moeller, and T.D. Curtis and their labor organization, The Brotherhood of Locomotive Engineers and Trainmen, General Committee of Adjustment, Central Region ("BLET") (collectively "plaintiffs"). The defendant is Union Pacific Railroad Company ("Union Pacific"). Plaintiffs move for summary judgment in their favor as to liability on Count II of the First Amended Complaint. Specifically, plaintiffs seek a finding that Union Pacific's current method for calculating through-freight locomotive engineers' entitlement to leave under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, ("FMLA") violates the FMLA. Union Pacific moves for summary judgment in its favor as to Count II in its entirety and the portions of Count I of the First Amended Complaint that involve claims by the individual plaintiffs of specific FMLA violations. For the reasons set forth more fully below, plaintiffs' motion for partial summary judgment as to liability on Count II of the First Amended Complaint is granted. Defendant's motion for partial summary judgment is denied.

**I. RELEVANT FACTS**

The facts relevant to the cross-motions for partial summary judgment are straightforward and undisputed unless specifically noted below. Union Pacific is a Class I freight carrier subject to the terms of the FMLA. During all times relevant to this case, the individual plaintiffs were through-freight locomotive engineers ("engineers") for Union Pacific and belonged to the BLET labor organization. Union Pacific engineers work variable schedules because Union Pacific does not schedule its trains in advance and runs them to meet customer demand. To facilitate its variable train schedules, Union Pacific created a "board" system. Under that system, names of available engineers are placed on a board. When a train is prepared for departure, the engineer whose name is at the top of the board is called and assigned to the departing train. The engineer whose name is second on the board is then moved to the top of the board and assigned to the next train prepared for departure. Engineers are provided with one and one-half to three hours of notice prior to being expected to report to work.

Prior to January 1, 2006, Union Pacific allowed its engineers to take up to 84 days of intermittent FMLA leave per calendar year. In late 2005, Union Pacific revised the method it used to calculate the amount of FMLA leave available to its engineers. Union Pacific began implementing its revised FMLA leave calculation method on January 1, 2006. Under its new calculation method, Union Pacific based an engineer's available FMLA leave on the engineer's number of "starts" from his/her home terminal during the 12 weeks [84 days] prior to the engineer's first use of FMLA leave in a given calendar year.[1] The duration of any given "start" can vary greatly depending on the destination of the engineers' train, rail traffic during the

---

[1] Neither party clearly defines that term "start." According to plaintiffs, a start "denotes the beginning of a trip, i.e. when the engineer literally starts and drives the train out of the engineer's home terminal . . . usually a round trip that can involve varying hours of work." Union Pacific does not object to this definition.

journey and other variables. Union Pacific tallied the number of starts over the 12-week "test period" and used that number to determine an engineer's available FMLA leave. Under Union Pacific's revised calculation method, if an engineer had 10 starts over the test period, then the engineer would be entitled to FMLA leave equal to missing 10 starts during the relevant year. Union Pacific also excluded various approved absences of 3 or more consecutive days from the 12-week test period. In other words, if an engineer missed 4 consecutive days during the 12-week test period because of a disability, vacation, or another approved absence, Union Pacific considered the number of starts he or she had over 88 days, instead of the standard 84 days, in calculating available FMLA leave. However, if the engineer had any absences of less than 3 consecutive days during the test period, Union Pacific did not add any additional days to the 84-day test period.

## II. LEGAL ANALYSIS

To succeed on a motion for summary judgment, the moving party must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any admissible affidavits do not create a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering these cross-motions for summary judgment, the Court must construe all facts in the light most favorable to the non-moving party and must view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The primary issue before the court is whether Union Pacific's method of calculating an

engineer's available FMLA leave based on "starts" instead of "hours worked" violates the FMLA. This question appears to be a matter of first impression. The parties' written submissions do not include any case law citations to support their respective positions on the issue, and the court's independent research has not uncovered any published, relevant precedent.

Accordingly, the court turns to the language of the FMLA and the corresponding implementing regulations to resolve this issue. Congress passed the FMLA in 1993. Thereafter, at the direction of Congress, the Department of Labor issued implementing regulations regarding the FMLA. *See* 29 U.S.C. § 2654; 29 C.F.R. § 825.100 *et seq*. The FMLA provides that "eligible employees shall be entitled to a total of 12 workweeks of leave during any 12-month period" for specified family or medical purposes. 29 U.S.C. § 2612(a)(1). When medically necessary, eligible employees taking FMLA leave for specific medical purposes can do so on an "intermittent" as opposed to a "block" basis. *See* 29 U.S.C. § 2612(b)(1); 29 C.F.R. § 825.203(a). "There is no limit on the size of an increment of leave when an employee takes intermittent leave. . . However, an employer may limit leave increments to the shortest period of time that the employer's payroll system uses to account for absences or use of leave, provided it is one hour or less." *See* 29 C.F.R. § 825.203(d).

An eligible employee under the FMLA is defined as an employee "who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). There is no dispute that the engineers are "eligible employees" under the FMLA. The only dispute is over the appropriate methodology for calculating "12 workweeks of leave" under the statue. The statute itself does

4

not specifically address appropriate calculation methods, therefore the court turns to the language of the corresponding implementing regulations. *Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837, 843 (1984)("[I]f the statute is silent or ambiguous with respect to the specific issue," the court defers to the regulation if it "is based on a permissible construction of the statute."). The Department of Labor's Regulation 825.205(d) addresses how to calculate FMLA leave for employees with variable schedules and provides that "[i]f an employee's schedule varies from week to week, a weekly average of the hours worked over the 12 weeks prior to the beginning of the leave period would be used for calculating the employee's normal workweek." 29 C.F.R. § 825.205(d).

It is undisputed that the engineers' work schedules vary from week to week and that § 825.205(d) is applicable to any discussion regarding the appropriate method for calculating the engineers' available FMLA leave. Union Pacific argues that its "starts" methodology for calculating available FMLA leave complies with § 825.205(d) and is the only "fair" way to calculate FMLA leave given the particular nature of an engineer's job and the railroad business. Union Pacific argues that an engineer who "marks off" on FMLA leave in order to skip a start and then "marks back up" three hours later has not simply missed three hours of work. That engineer has missed an entire start, including the round trip back to his home terminal. Accordingly, Union Pacific argues that available and used FMLA leave must be calculated in terms of "starts," as opposed to "hours worked," to fairly account for the time an engineer has actually worked and the time that he has missed while on FMLA leave. Importantly, Union Pacific does not claim that it is unable to track the engineers' "hours worked." In fact, Union Pacific currently tracks certain hours worked by their engineers in order to comply with the

Hours of Service Act. *See* 49 C.F.R. §§ 228.7 - 228.8.

Plaintiffs disagree with Union Pacific's position and argue that the "starts" methodology violates the clear language of § 825.205, which requires an employer to use "a weekly average of . . . hours worked," not some other method like "starts" when calculating available FMLA leave for an employee who works a variable schedule. The court agrees with plaintiffs. Section 825.205 requires an employer to calculate available FMLA leave for an employee who works a variable schedule based on "hours worked." The Department of Labor could have, but chose not to include language in the regulation to account for some other calculation method besides "hours worked." Further, Union Pacific concedes that it can and currently does track "hours worked" by its engineers. Union Pacific appears to have adopted the "starts" methodology because it believes that method is more "fair" and easier to calculate and implement than an "hours worked" methodology. Unfortunately for Union Pacific, its current methodology does not comport with the plain language of § 825.205(d). Therefore, the court grants plaintiffs' motion for summary judgment as to liability on Count II of the First Amended Complaint.

Union Pacific must adopt a new methodology for calculating the engineers' available FMLA leave that is based on a weekly average of "hours worked" as opposed to "starts." The exact calculation methodology Union Pacific should adopt and what time on the job it should consider as "hours worked" by the engineers for FMLA leave purposes are up to the parties to decide. The collective bargaining process appears to be a well-suited forum for resolving those issues. Once Union Pacific has adopted a revised calculation methodology that complies with the FMLA and its implementation regulations, the issue of damages will be ripe for the court's consideration. The revised calculation will serve as a benchmark against which the court can

compare the "starts" methodology to determine what damages, if any, the engineers sustained as a result of Union Pacific's non-compliant calculation.

### III. CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment is granted and Union Pacific's motion for summary judgment is denied.

**ORDERED:** Plaintiff's motion for leave to file additional documents in support of their Local Rule 56.1(b)(3)(B) response [74] is denied as moot. Plaintiffs' motion for summary judgment as to liability on Count II of the First Amended Complaint [60] is granted. Defendant Union Pacific's motion for partial summary judgment [59] is denied.

E N T E R:

_____
George W. Lindberg
SENIOR U.S. DISTRICT JUDGE

DATED: October 16, 2007